PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HBK SORCE FINANCIAL, | ) | |
| | ) | CASE NO. 4:10-cv-02284 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| AMERIPRISE FINANCIAL SERVICES, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** (Resolving ECF Nos. 78 |
| Defendant. | ) | and 85) |

Plaintiff HBK Sorce Financial LLC (HBKS) formerly employed individual defendants Kevin Bannon, Elli Asti, and Sarah Irwin. In August 2011, Bannon, Elli, and Irwin left HBKS and joined a competitor, defendant Ameriprise Financial Services, Inc. (Ameriprise). HBKS and several related entities sued defendants, alleging, *inter alia*, breach of contract, breach of fiduciary duties, misappropriation of trade secrets, and unfair competition. Bannon moved this Court to stay the proceedings pending arbitration of the claims against him as required by the employment contract between Bannon and HBKS. This Court granted the motion.

The arbitrator found Bannon liable under several theories and awarded HBKS $423,606.55, plus interest and attorney fees.

Pending is HBKS's motion to lift the stay pending arbitration and confirm the final arbitration award. ECF No. 78. Also pending is Bannon's motion to vacate or modify the arbitration award. ECF No. 85. For the reasons that follow, the Court grants HBKS's motion and denies Bannon's motion.

Jurisdiction exists under 28 U.S.C. § 1332.

(4:11cv106)

## Background

HBKS provides personal financial services to individual clients.  In August 2001, Bannon sold his firm, English and Bannon, to HBKS.  As part of the sale agreement, Bannon became an HBKS employee and continued to serve the same clients in St. Marys and Titusville, Pennsylvania.  In return, Bannon received new client referrals from HBKS and began earning a salary.

In 2011, while employed by HBKS, Bannon, Asti and Irwin began planning to join Ameriprise.  Bannon and Ameriprise entered into a franchise agreement under which Bannon would open new offices in St. Marys and Titusville, and attempt to bring HBKS clients with him to Ameriprise.  In August 2011, Bannon, Asti and Irwin executed their plan and joined Ameriprise. Almost immediately, the majority of HBKS's St. Marys and Titusville clients transferred their accounts to Bannon at Ameriprise.  Plaintiffs sued defendants, and arbitration followed.

The arbitrator permitted extensive discovery.  After the discovery deadline, the parties submitted counter-motions for summary judgment.  The arbitrator issued an opinion and order holding a liquidated damages clause in the Bannon/HBKS employment contract unenforceable. The arbitrator stated he would allow HBKS to prove unjust enrichment damages at the arbitration hearing.

After six days of hearing testimony and receiving exhibits, the arbitrator closed the record and took the case under advisement.  On January 26, 2012, the arbitrator issued a lengthy Interim Award in which he ruled Bannon breached several duties he owed HBKS.  The arbitrator awarded HBKS the profit Bannon earned after joining Ameriprise under an unjust enrichment theory.  In calculating Bannon's profits, the arbitrator deducted Bannon's expenses, including what the

(4:11cv106)

arbitrator considered Bannon's reasonable salary. The arbitrator based his unjust enrichment calculations on Exhibit 79, which Bannon prepared and presented during the arbitration hearing.

During arbitration, HBKS requested the arbitrator extend unjust enrichment damages for three years, the length of time Bannon had contractually agreed not to compete with HBKS. Because the parties only presented evidence of lost profits through October 24, 2010, the arbitrator initially limited unjust enrichment damages to the time period before that date. In the Interim Award, the arbitrator retained jurisdiction to hold a final hearing as to whether unjust enrichment damages should extend into the future.

Bannon then twice moved the arbitrator to amend the Interim Award. Bannon argued the arbitrator erred in calculating damages by relying on an incomplete document, Exhibit 79, and failing to deduct his salary as an expense. Bannon also requested that the arbitrator reopen the record to allow him to prove his salary. The arbitrator denied Bannon's motions.

On May 5, 2012, the arbitrator issued his Final Award. In the award, the arbitrator rejected Bannon's argument that Exhibit 79 did not account for his salary during his first eighteen months as an Ameriprise franchisee. The arbitrator found Exhibit 79 showed that Bannon received an annual salary of about $84,000 during that period. The arbitrator extended damages six months from the date of the Interim Award, which approximately corresponded to the date of the Final Award. However, the arbitrator held that further future damages were too speculative. HBKS then filed its motion to confirm the arbitration award, and Bannon filed his motion to vacate or modify the award.

(4:11cv106)

## Standard of Review

Review of an arbitration award is "strikingly deferential." *Bixby Med. Ctr., Inc. v. Mich. Nurses Ass'n*, 142 F. App'x 843, 845 (6th Cir. 2005). Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14, a court may only vacate an arbitration award where the arbitrator engaged in misconduct, or "exceeded [his] powers, or so imperfectly executed them" that the arbitrator did not issue a final and definite award. *See* 9 U.S.C. § 10(a)-(e). A court "must" confirm an arbitration award "unless" the court vacates, modifies, or corrects the award "as prescribed" in the FAA. *Hall St. Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). This limited review is meant to avoid "full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Hall St. Associates*, *supra*, 552 U.S. at 588 (quoting *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 998 (9th Cir. 2003)).

Additionally, the Sixth Circuit has held that a court may vacate an arbitration award if it displays "manifest disregard of the law." *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 713 (6th Cir. 2005) (citing *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 421 (6th Cir.1995)). Manifest disregard of the law is also a very limited standard of review. *Anaconda Co. v. District Lodge No. 27*, 693 F.2d 35, 37 (6th Cir. 1982). An arbitrator "does not act in manifest disregard for the law unless (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrator[] refused to heed that legal principle." *Jaros*, *supra*, 70 F.3d at 421.

4

(4:11cv106)

Because "the standard for reviewing arbitration awards 'is one of the narrowest standards of judicial review in all of American jurisprudence,' the party opposing confirmation of an arbitration award bears a heavy burden." *Mich. Family Res., Inc. v. SEIU Local 517M*, 438 F.3d 653, 656 (6th Cir. 2006) (quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514–15 (6th Cir.1999)).

## Discussion

Bannon argues the arbitrator committed misconduct under FAA § 10(a)(3),[1] exceeded his authority under FAA § 10(a)(4),[2] and his award represents a manifest disregard of the law. Bannon requests that the Court vacate or modify the Final Award under FAA § 11(a).[3]

### A. Misconduct under FAA § 10(a)(3)

Bannon argues the arbitrator committed misconduct requiring vacatur under FAA § 10(a)(3) by:

- allowing HBKS to prove and recover unjust enrichment damages after HBKS indicated it would only seek liquidated damages under the employment contract;

- refusing to continue hearings to allow Bannon to prepare and present witness testimony;

- allowing HBKS to take additional discovery during the arbitration hearing; and

- miscalculating damages by failing to consider Bannon's salary and

---

[1] 9 U.S.C. § 10(a)(3).

[2] 9 U.S.C. § 10(a)(4)).

[3] 9 U.S.C. § 11(a).

5

(4:11cv106)

determining damages based on an incomplete and inadmissible document.

FAA § 10(a)(3) provides a basis for vacating an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced . . . ."

Arbitrators are not bound by formal procedural and evidentiary rules. *Louisiana D. Brown 1992 Irrevocable Trust v. Peabody Coal Co.*, 2000 WL 178554, at *5-6 (6th Cir.). Arbitration procedures are sufficient under FAA § 10(a)(3) so long as they provide the parties with a fundamentally fair hearing. *Id*. "Fundamental fairness requires only notice, an opportunity to present relevant and material evidence and arguments to the arbitrator[], and an absence of bias on the part of the arbitrator[]." *Id*. (citing *Bowles Financial Group, Inc. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994)).

### 1. Changed Theory of Damages

Bannon first argues the arbitrator committed misconduct requiring vacatur by allowing HBKS to change its theory of damages after the arbitrator's summary judgment order. The Court disagrees.

HBKS initially indicated it would rely on the contractual liquidated damages clause as its measure of damages. Bannon argues the arbitrator committed misconduct by allowing HBKS to instead prove unjust enrichment damages,[4] and by indicating, in his opinion and order on summary

---

[4] Bannon actually argues the arbitrator improperly allowed HBKS to prove lost profit damages. It appears Bannon has confused lost profit damages, which would have allowed HBKS to recover the profits it lost as a result of his actions, with unjust enrichment damages, which allowed

6

(4:11cv106)

judgment, that this may represent the proper measure of damages.

The arbitrator's decision to allow HBKS to present unjust enrichment damages did not deprive Bannon of notice of the claims or prejudice Bannon's ability to present relevant and material evidence. Bannon acknowledges that, after summary judgment, he knew the arbitrator would allow evidence of his profits as the measure of damages. Bannon then had ample opportunity, through the six days of hearings, to present evidence establishing his expenses and proving his profits. Thus, the arbitrator's decision to allow HBKS to rely on unjust enrichment damages did not amount to misconduct depriving Bannon of a fundamentally fair hearing.

### 2. Refusal to Continue Hearings

Bannon next argues the arbitrator denied him a fundamentally fair hearing by denying his requests to continue hearings to allow him further time to prepare evidence. The Court disagrees.

Bannon requested the arbitrator continue hearings on October 24, 2011, and April 11, 2012. Shortly before the October 24, 2011, hearing, the arbitrator granted HBKS discovery regarding Bannon's profits from April 16, 2010, to the date of the hearing. Bannon argues this discovery order affected his ability to defend the claims against him by dividing his efforts during the hearing. At the April 11, 2012 hearing, the arbitrator refused to accept additional testimony from Bannon or continue the hearing. Bannon wished to present testimony that Exhibit 79 did not account for his salary.

---

HBKS to recover the profit Bannon improperly earned. Because the arbitrator ultimately awarded damages under an unjust enrichment theory, the Court will address the propriety of him doing so.

7

(4:11cv106)

Bannon has failed to show the discovery order prejudiced his right to a fair hearing by dividing his efforts at trial. Bannon has not explained how the additional discovery prevented him from presenting his witnesses and evidence regarding the merits of the case. To the contrary, it appears Bannon testified at length and had a full opportunity to rebut the claims against him. The Court therefore rejects Bannon's argument that the arbitrator's refusal to continue the October 24, 2011, hearing amounted to misconduct.

The Court also rejects Bannon's argument that the arbitrator's refusal to hear additional testimony regarding Bannon's salary and expenses at the April 11, 2012 final hearing amounted to misconduct. *See Peabody Coal Co.,* 205 F.3d 1340, at *5 ("Arbitration may proceed . . . with restricted inquiry into factual issues."). During the six-day arbitration hearing, the arbitrator provided Bannon the opportunity to present evidence of his salary, and Bannon knew that evidence would affect the measure of damages. It appears Bannon instead relied on a strategy of undermining the reliability of Exhibit 79, rather than providing affirmative testimony establishing his actual past salary. Although Bannon did not present evidence of his past salary, this does not change the fact that the arbitrator gave him the opportunity to do so. The Court finds it particularly curious that Bannon did not simply testify regarding his past salary with HBKS or Ameriprise. In any event, the arbitrator did not deprive Bannon of a fair hearing by refusing to grant him a second attempt, after the close of the arbitration hearings, to prove his salary.

### 3. Miscalculating Damages and Admitting Exhibit 79

Bannon argues the arbitrator erred in refusing to amend the Interim Award calculating damages and by relying on Exhibit 79 to determine damages. The Court disagrees.

(4:11cv106)

Bannon testified at the hearings that Exhibit 79 was merely a draft document, had not been reviewed by an expert, and was incomplete and inaccurate. Before the final hearing, Bannon testified that Exhibit 79 did not represent his actual expenses. Specifically, he stated Exhibit 79 did not include his salary for a period of time after he joined Ameriprise. However, Bannon failed to provide testimony or evidence establishing his salary for this period. Following the arbitration hearing, Bannon filed an affidavit from an accountant in an attempt to establish his salary was about $200,000 annually.

The reliability, accuracy, and admissibility of Exhibit 79 were issues properly resolved by the arbitrator. *See Peabody Coal Co.*, 205 F.3d 1340 at, *5 ("[I]t is the arbitrators who are the judges of the relevance and materiality of the evidence offered."). The arbitrator rejected the affidavit, and instead relied on the evidence presented at hearing, including Exhibit 79. The arbitrator noted that, although imperfect, Exhibit 79 presented the best evidence on which to base the damages calculation. The arbitrator found Exhibit 79 showed Bannon's annual salary was about $84,000. The arbitrator also noted Bannon attempted to undermine the reliability of Exhibit 79, but failed otherwise to establish his annual salary.

The arbitrator could properly reject Bannon's self-serving testimony that Exhibit 79 did not reflect his actual salary. Bannon prepared and presented Exhibit 79, and later attempted to undermine its credibility. However, because the arbitrator heard and considered Bannon's testimony regarding the reliability of this document, Bannon had the requisite fair opportunity to present evidence about this issue, and the arbitrator did not commit misconduct in accepting Exhibit 79 as submitted. The arbitrator's reliance on Exhibit 79 to calculate damages, therefore, cannot provide

9

(4:11cv106)

a basis for vacatur.

### B. Exceeding Authority under FAA § 10(a)(4)

Bannon also argues the arbitrator exceeded his authority in violation of FAA § 10(a)(4) by issuing both an Interim Award and a Final Award. The Court disagrees.

The arbitrator found Bannon liable in the Interim Award, and awarded damages through the date of that award. The arbitrator also determined that future damages for up to three years might be appropriate. The arbitrator asked the parties to present argument regarding the propriety of future damages. HBKS, however, requested the arbitrator forego awarding future damages and issue the Final Award. Thereafter, the arbitrator issued the Final Award, awarding damages for an additional six-month period, which roughly corresponded to the period between the Interim Award and Final Award.

FAA § 10(a)(4) allows a court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Whether an arbitrator exceeds his authority by issuing an interim award depends on the terms of the agreement. *Island Creek Coal Sales Co. v. City of Gainesville, Fla.*, 729 F.2d 1046, 1048 (6th Cir. 1984), *abrogated on other grounds, Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000). A court should uphold an interim award unless the complaining party shows the arbitrator "clearly exceeded" his authority by issuing an award under procedures outside the scope of the agreement. *Id*. In addition, a court should defer to an arbitrator's interpretation of the agreement and arbitration rules. *Id*.

(4:11cv106)

Bannon and HBKS's employment contract provided only that:

[A]ny controversy, dispute or claim arising out of, in connection with, or in relation to the contract, tort or statute, shall be settled, at the request of either party, by arbitration in accordance with the Employment Dispute Resolution Procedures of the American Arbitration Association [AAA].

Bannon has failed to demonstrate the arbitrator clearly exceeded his authority under the employment contract or the AAA Employment Rules. The parties' contract merely stated the arbitrator would settle all claims, but did not provide for nor prohibit specific procedural measures. Because an arbitrator is granted considerable deference in determining the procedure of the arbitration process, and Bannon has failed to demonstrate the arbitrator exceeded any contractual requirement or AAA Rule, the Court rejects this argument.

### C. Manifest Disregard for the Law

Bannon argues that the arbitrator's damage calculation manifestly disregarded the law. The Court disagrees.

The arbitrator used Exhibit 79 to calculate actual unjust enrichment damages from April 16, 2010 to October 24, 2011. He then used this calculation to grant damages for another six months. The arbitrator also found it proper to award damages for three years following Bannon's departure from HBKS. At HBKS's request, however, the arbitrator did not do so. This, at least arguably, was a windfall for Bannon.

Bannon first argues the arbitrator's unjust enrichment calculation was inconsistent with clearly established law because it did not account for Bannon's reasonable salary and was based on unreliable evidence. As discussed above, the arbitrator sufficiently considered proof of Bannon's salary and reduced the unjust enrichment damages accordingly. The Court, therefore, rejects this

11

(4:11cv106)

argument.

Bannon also argues the arbitrator's calculation of damages did not meet the requirement that damages be proven within a reasonable degree of certainty because the arbitrator extended damages for an additional six months beyond the Interim Award, and no evidence of Bannon's profits and losses existed for that period of time.

To justify recovery, a litigant must prove damages within a reasonable degree of certainty. *See*, *e.g.*, *Bobb Forest Products, Inc. v. Morbark*, 151 Ohio App. 3d 63, 88 (2002). Speculative damages, therefore, are not recoverable. *Id*. "This rule serves to preclude recovery, however, only where the fact of damage is uncertain, *i.e.*, where the damage claimed is not the certain result of the wrong, not where the amount of damage alone is uncertain." *Grantham and Mann, Inc. v. American Safety Products, Inc.*, 831 F.2d 596, 601-02 (6th Cir. 1987). "Once the existence of damages has been shown, all that an award of damages requires is substantial evidence in the record to permit a factfinder to draw reasonable inferences and make a fair and reasonable assessment of the amount of damages." *Lee Shops, Inc. v. Schatten-Cypress Co.*, 350 F.2d 12, 18 (6th Cir. 1965).

Bannon has failed to demonstrate the arbitrator manifestly disregarded the law in awarding damages for an additional six-month period. As the arbitrator noted in the Final Award, Bannon did not dispute, at the final hearing, that he continued to operate his business. In determining damages for the additional six-month period, it appears the arbitrator assumed Bannon continued to earn the same proportionate amount during this period as he did in the preceding year. To be sure, this may not represent the most complete or accurate measure of actual damages. But Bannon has failed to show that the arbitrator's calculations, based Bannon's financial statements for the immediately

12

(4:11cv106)

preceding year, so unreasonably assessed damages that the arbitrator refused to heed a clearly defined legal principle. To this end, the Court notes Bannon has failed to cite any authority supporting his contention that this measure of damages was improper. Bannon, therefore, has failed to demonstrate the arbitrator manifestly disregarded the law.

### D. Modification of the Final Award under FAA § 11(a)

Finally, Bannon argues that the Court must modify the Final Award under FAA § 11(a)[5] because the award contains an evident miscalculation of damages. The Court disagrees.

FAA § 11(a) allows a court to modify an award "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award."

Bannon again argues that the arbitrator failed to reduce the measure of damages to account for his reasonable salary and erred in extending damages for an additional six months after the Interim Award. He argues these errors represent evident miscalculations appearing on the face of the award.

"[A]n evident . . . miscalculation of figures concerns a computational error in determining the total amount of an award-what the Fourth Circuit calls a mathematical error appear[ing] on the face of the award." *Grain v. Trinity Health, Mercy Health Services Inc.*, 551 F.3d 374, 378 (6th Cir. 2008) (citing *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 194 (4th Cir.1998)).

---

[5] Bannon also argues the Court should modify the award under FAA § 11(c), which allows modification for awards when "the award is imperfect in matter of form not affecting the merits of the controversy." Because Bannon's argument does not dispute the form of the award, and appears wholly to concern the merits of the controversy, the Court rejects this argument.

(4:11cv106)

The Sixth Circuit has described this as "an obvious numerical gaffe in computing the total award[,]" rather than an alleged merits-based mistake such as an incorrect factual finding that led to an incorrect computation of damages. *Id*.

FAA § 11(a) does not allow modification of the award because Bannon argues a mistake on the merits, rather than a mathematical error on the face of the award. Bannon simply repeats his arguments that the arbitrator relied on unreliable evidence, should have found he earned a larger salary, and should not have extended damages beyond the Interim Award. These remain factual, merit-based issues the arbitrator resolved in HBKS's favor. Because Bannon has failed to point to any mathematical miscalculations apparent on the face of either award, the Court rejects this argument.

**Conclusion**

Defendant Bannon has failed to demonstrate the arbitrator committed errors requiring vacatur or modification under the FAA.

For the foregoing reasons:

1. HBKS's motion to lift the stay pending arbitration and confirm the arbitration award (ECF No. 78) is granted; and

2. Bannon's motion to vacate or modify the arbitration award (ECF No. 85) is denied.

IT IS SO ORDERED.

 September 28, 2012                    */s/ Benita Y. Pearson*
Date                                        Benita Y. Pearson
                                                   United States District Judge